<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEVON M. CUTRONA and ELIZABETH A. FAVINGER, : : : Plaintiffs, : : v. : : INTERNATIONAL FLAVORS AND FRAGRANCES, : : : Defendant. : | Civil Action No. 03-1886 (JAG) **OPINION** |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before the Court on the motion for summary judgment by Defendant International Flavors and Fragrances ("IFF"), pursuant to FED. R. CIV. P. 56. For the reasons set forth below, Defendant's motion will be granted.

<u>**BACKGROUND**</u>

Plaintiffs Devon M. Cutrona ("Cutrona") and Elizabeth A. Favinger ("Favinger") worked as computer support personnel at IFF facilities under a contract between IFF and IBM for an IBM technology help desk. Favinger was employed by Alternative Resource Corporation, which contracted her services to IBM. Favinger was placed at IFF's South Brunswick, New Jersey facility, where she worked from approximately September of 1998 until April 1, 2002. Cutrona was employed by Delphi Business Systems, which contracted her services to IBM. Favinger was placed at IFF's Hazlet, New Jersey facility, where she worked from approximately April of 2001 until April 1, 2002.

In mid-2001, IFF decided to terminate its agreement with IBM and to create new technology support positions. IFF named the new positions "IT Support Analyst" and decided to seek new employees to fill six positions. IFF posted a job listing on the company's intranet in December, 2001. Favinger applied for a position via email on December 20, 2001. The IFF employee in charge of hiring was Raymond Eskra ("Eskra"). Eskra interviewed Favinger on January 16, 2001. A position was not offered to Favinger. Cutrona applied for a position via email on January 30, 2002. Eskra did not interview her or offer her a position.

All six of the employees hired for the new positions were male. Cutrona filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that, by not hiring her, IFF discriminated against her on the basis of sex, in violation of Title VII. The EEOC investigated and, on September 26, 2002, issued a report concluding that Cutrona and "other females, as a class, were denied hire into the position of IT Support Analyst because of their sex." (Pls.' Opp. Br. Ex. B.)

On April 28, 2003, Cutrona and Favinger filed the instant Complaint, listing four counts: I) employment discrimination, in violation of Title VII; II) employment discrimination, in violation of the New Jersey Law Against Discrimination ("NJLAD"); III) breach of employment contract; and IV) intentional infliction of emotional distress.

## LEGAL STANDARD

### I.   Summary Judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations .

. . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## II. Employment Discrimination: Disparate Treatment Claims

All disparate treatment[1] claims for employment discrimination under federal law are analyzed by application of the McDonnell Douglas test:

> The Court in *McDonnell Douglas* set forth a burden-shifting scheme for discriminatory-treatment cases. Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual. The Courts of Appeals have consistently utilized this burden-shifting approach when reviewing motions for summary judgment in disparate-treatment

---

[1] A disparate treatment case is one in which "[t]he employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).

cases.

Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003) (citations omitted).  Moreover, the New Jersey Supreme Court has adopted the McDonnell Douglas test for claims under all state proscriptions against discrimination, both statutory and constitutional.  Peper v. Princeton University Board of Trustees, 77 N.J. 55, 83 (1978) (recommending use of the McDonnell Douglas test for all "actions brought under the Law Against Discrimination or any other State proscription against discrimination").

To state a prima facie case of discriminatory failure to hire under Title VII, a plaintiff must establish that: (i) she is a member of a protected class; (ii) that she applied and was qualified for a job for which the employer was seeking applicants; (iii) that despite her qualifications, she was rejected; and (iv) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the employee's rejection."  McDonnell Douglas, 411 U.S. at 802.

The employer may satisfy the burden by introducing evidence which, taken as true, would allow the factfinder to conclude that there was a nondiscriminatory reason for the unfavorable employment decision.  St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).  The employer need not prove that the tendered reason actually motivated the decision.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  The burden of proving intent remains with the Plaintiff.  Id.

If the defendant employer satisfies the burden, then "the plaintiff must 'submit evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Fakete v. Aetna, 308 F.3d 335, 338 n.3 (3d Cir. 2002). The plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow the factfinder to infer that each of the employer's proffered nondiscriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action. Fuentes, 32 F.3d at 764.

At this stage, however, the burden shifts back to the plaintiff, and the plaintiff must show, by a preponderance of the evidence, that the employer's explanation is pretextual. Id. "The test is whether the plaintiff ultimately persuades the factfinder that the employment decision was caused by bias" and that the real reason for the employer's adverse employment decision is discrimination. Id.

## DISCUSSION

**I.  Defendant's motion for summary judgment on employment discrimination**

Defendant moves for summary judgment on Plaintiffs' employment discrimination claims under Title VII and NJLAD, arguing that Plaintiffs have failed to make out a prima facie case for discrimination under McDonnell Douglas and have not shown that the reasons for not hiring them are pretextual.

    A.    McDonnell Douglas Step 1: the Prima Facie Case.

"The burden of establishing a prima facie case of disparate treatment is not onerous." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). There is no dispute that

Plaintiffs have satisfied the first and third elements of the prima facie case: they are members of a protected class, applied for a position, and were not hired. The parties dispute the second and fourth elements. Favinger has failed to establish the fourth element of the prima facie case.

The fourth element of the prima facie case requires that a plaintiff prove "that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." McDonnell Douglas, 411 U.S. at 802. The plaintiff bears the burden of proof of the prima facie case. Burdine, 450 U.S. at 260. Thus, at summary judgment, Defendant bears the initial burden of pointing out the "absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Defendant has met this burden, as to the fourth element, by pointing out that Plaintiffs have no evidence to show that the employer continued to seek applicants from persons with Plaintiffs' qualifications.

Once the moving party has met its burden, "the burden then shifts to the non-movant to identify which portions of the record support the allegedly unsupported element." In re Phillips Petroleum Sec. Litig., 881 F.2d 1236, 1243 (3d Cir. 1989). Plaintiffs attempt to meet this burden by pointing to the undisputed fact that the positions were filled by males, as well as to the EEOC determination letter of September 26, 2002. (Pls.' Opp. Br.)[2]

The EEOC letter, however, refers only to Devon Cutrona. (Pls.' Opp. Br. Ex. B.) Moreover, the letter refers to the "Charging Party" only in the singular. (Id.) In Favinger's affidavit, which covers her allegations in detail, Favinger does not claim that she complained to the EEOC, nor that the EEOC investigated her employment situation. Thus, although Plaintiffs, in their counterstatement of material facts, allege that "plaintiffs" (in the plural) complained to

---

[2] Plaintiffs' brief has no page numbers, and so the citations to it herein are unnumbered.

the EEOC, they have offered no evidence to support an inference that the EEOC letter provides specific evidence about Favinger as to the fourth element of the prima facie case.[3] (Counter. Mat. Facts ¶ 30.)   Favinger has identified no evidence to prove that the employer continued to seek applicants from persons of her qualifications.

Moreover, Favinger made a statement that may reasonably be read as an admission that she was weak on a skill.  At her deposition, describing the interview with Eskra, she stated: "He asked me if I had any background in database management, and I said not in a long time." (Kelly Decl. Ex. C 108: 19-21.)  This may reasonably be understood as a statement that Favinger's database management skills were not up to date.  Thus, to make out the fourth element of the prima facie case, Favinger must show that the employer continued to seek applicants with skills in database management that were not up to date.  No such evidence appears in the record.

This constitutes a complete failure of proof as to the fourth element of the prima facie case.  Favinger has not defeated Defendant's motion for summary judgment as to the employment discrimination claims.  For Favinger, the McDonnell Douglas analysis stops here.

Turning to Cutrona's prima facie case, the EEOC letter is problematic as evidence. Defendant has objected that it should be inadmissible under FED. R. EVID. 403, as more prejudicial than probative.  There is good reason to find that this is so, at least as to its conclusions.  The letter appears to be strong evidence that Cutrona was the victim of illegal discrimination because of gender.  Yet the letter is vague as to the factual basis for its

---

[3] The letter does state that the EEOC reviewed the application materials of all of the unsuccessful female applicants, and that "other more qualified female applicants were passed over in favor of less qualified males . . ." (Pls.' Opp. Br. Ex. B.)  The letter does not say whether or not Favinger was one of those more qualified applicants.

conclusions, and seems to be based on an analysis that is quite different from that required of this Court by McDonnell Douglas. The EEOC appears to have looked at the hiring process as a whole,[4] and its conclusion is about discrimination against the class of females. This is an issue that is confusingly similar to, and significantly different from, the issue presently before this Court. At issue here is the question of whether IFF, when it declined to hire Cutrona, did so because of her gender. The EEOC statement that the class of female applicants were denied hire because of their sex is probative of the question of what motivated IFF's decision not to hire Cutrona in particular, but it is more prejudicial than probative. The EEOC letter does not state that IFF refused to hire Cutrona because of her gender, but it is very likely that a jury would believe that it does state this. As a result, its conclusions would be inadmissible under FED. R. EVID. 403. See Coleman v. Home Depot, Inc., 306 F.3d 1333, 1345 (3d Cir. 2002) ("Rule 403 may operate on an EEOC report, and that the decision of whether or not an EEOC Letter of Determination is more probative than prejudicial is within the discretion of the trial court, and to be determined on a case-by-case basis.").

Nonetheless, the letter is admissible for its statement that Cutrona was well-qualified for the position. This establishes the second element of the prima facie case. It also implies the fourth element: if she was qualified and not hired, and IFF hired someone else, then IFF necessarily continued to seek applicants of her qualifications. Cutrona has made out a prima facie case of employment discrimination. The McDonnell Douglas analysis proceeds to the next step for Cutrona only.

---

[4] The scope of the investigation is one key area of vagueness. The letter suggests, but does not clearly state, that the EEOC looked at the hiring for all of the IT Support Analyst vacancies in the New York/New Jersey region.

B.      McDonnell Douglas Step 2: the Employer's Response.

At the second step, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  Defendant states, in brief, three reasons that Cutrona was not hired: 1) she did not have the requisite competencies for the position; 2) other applicants were more qualified; and 3) references who had previously worked with Cutrona at IFF gave negative feedback about her job performance.  (Def.'s Br. 22-23.)

C.      McDonnell Douglas Step 3: Demonstrating Pretext.

At the third step of the McDonnell Douglas test, the burden shifts back to the Plaintiff to show that the reason articulated by the employer is not the true reason, but rather a pretext for discrimination.  "[A] plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000).  "This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination.  She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

Cutrona has not shown that she has been the victim of intentional discrimination, either by the direct or the indirect approaches.  Cutrona's arguments are as follows:

> 1.      Eskra relied on feedback from Allen Shirley, but they do not show complete agreement in their opinions about Cutrona.

10

Cutrona contends that Eskra's opinions about her differed from those of Allen Shirley, a co-worker of Cutrona's who was hired for one IT Support Analyst position, but she does not make an intelligible argument about how this is evidence that she was the victim of intentional discrimination. In Plaintiffs' opposition brief, Plaintiffs purport to point to examples of conflicting statements, but provide no citations to the record. Plaintiffs allege that Shirley testified at deposition that Cutrona had the necessary skills to perform the job, while Eskra believed that she did not. (Pls.' Opp. Br.) Plaintiffs include a single page from Shirley's deposition testimony, in which he was asked about whether Cutrona had "the skills to do what was necessary" in her IBM contract position at the IFF Hazlet facility. (Pls.' Opp. Br. Ex. J.) There is nothing on this page that suggests that, when Shirley agreed that she had such skills, he was expressing an opinion about Cutrona's skills to perform the IT Support Analyst position at issue.

Plaintiffs next allege – again, without any citations to the record – that Shirley expressed the opinion that Cutrona was unprofessional, which is inconsistent with positive written reviews of her work at IFF. In the absence of any evidence of record to support this argument, it is mere allegation.

        2.     Male applicants were hired who did not meet the criteria stated in the job listing.

Plaintiffs contend that Allen Shirley and Eddie Rosado were hired for the IT Support Analyst position, but lacked the required qualifications. Again, Plaintiffs offer no citation to any evidence of record except for their own affidavits. The affidavits establish only that Plaintiffs hold the opinion that Shirley and Rosado lacked the qualifications for the position. Plaintiffs'

subjective opinions are of low probative value as proof that IFF hired unqualified men.

      3.  In evaluating Cutrona, Eskra applied requirements not stated in the job listing.

Again, Cutrona does not cite to specific evidence in the record, other than a general reference to her own affidavit, which contends that the required job skills Eskra testified to looking for on page 7 of his deposition transcript were not listed in the official job posting. (Cutrona Aff. ¶ 25.) Both page 7 and the job posting were attached to the affidavit. These documents, however, do not support Cutrona's claim. On the attached deposition page, Eskra states: "Basically the variables we were looking for were competencies. Competencies in a wide range of computer skills, competencies in administration capabilities, and by that I mean let's say project management, and competencies in customer service." (Attachment to Cutrona Aff.)

The job posting clearly states that a wide range of computer skills are required, as are customer service skills. The description also requires that the applicant be able to "administer user accounts," "have a basic understanding of the Notes Administration process . . . and how to manage the accounts." (Attachment to Cutrona Aff.) The job summary concludes that the employee "[w]ill also work on specific IT projects with other IT specialists in the region and globally." (Id.) Under "Key Responsibilities," it states: "Work with Local and Global IT teams to deliver technology projects on time." (Id.) The job description thus can easily be read to ask for administration and project management capabilities.

Eskra's declaration states that Cutrona "lacked the necessary skill set for the IT Support Analyst position. Her resume did not show the accomplishment I was looking for . . ." (Eskra Dec. ¶ 21.) This does not indicate that Eskra applied requirements not stated in the job listing.

Cutrona has offered no evidence in support of the assertion that Eskra applied requirements to her that were not stated in the job description.

> 4. Cutrona had to contend with criticism of how she looked in a t-shirt, unlike any male applicant.

Cutrona points to her own affidavit in support of this allegation. In her affidavit, she refers to the deposition testimony of Allen Shirley, alleging that he criticized as unprofessional her "summertime attire of sandals, t-shirts . . ." (Cutrona Aff. ¶ 19.) Cutrona offers no evidence on the subject of whether any male applicant's attire was similarly criticized as unprofessional, and so no inference of disparate treatment is justified.

Under Fuentes, at the third step of the McDonnell Douglas analysis, Cutrona has the burden of producing evidence that would allow the factfinder to infer that each of the employer's nondiscriminatory reasons was "was either a post hoc fabrication or otherwise did not actually motivate the employment action." Fuentes, 32 F.3d at 764. The evidence must point to real weaknesses in the reasons offered:

> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons.

Fuentes, 32 F.3d at 765.

Cutrona has not carried her burden under Fuentes. Careful scrutiny of Cutrona's arguments and evidence shows that Cutrona's only evidence is the EEOC letter, which is

13

evidence that she was qualified for the position, and Plaintiffs' statements of belief that Defendant hired unqualified men. This is insufficient to meet her burden of showing, via either the direct or the indirect approach, that there is evidence from which to infer that a discriminatory reason actually motivated the employment decision.

Cutrona's evidence is insufficient to defeat the motion for summary judgment for several reasons. First, at most, it addresses only one of the three reasons for not hiring her offered by Defendant: Cutrona has proffered evidence that Defendant's explanation that she was not qualified is incorrect. Under Fuentes, however, it is not enough to show that the employer was wrong; Plaintiff must show implausibilities that make the reasons unworthy of credence, and she has not offered evidence that suggests that describing her as unqualified is a pretext for illegal discrimination. Second, Cutrona has offered no evidence which addresses the two other reasons offered by Defendant: other applicants were more qualified, and Cutrona received negative references. The absence of any evidence as to the qualifications of Brett Davido, the person hired for the position Cutrona applied for, is a substantial weakness in Cutrona's case.0 Cutrona has offered no evidence leading this Court to disbelieve the straightforward explanation that Davido was hired because he was more qualified.

Cutrona has offered little evidence to meet her burden of countering Defendant's proffered reasons for the decision not to hire her. No reasonable jury could conclude, based on this evidence, that Defendant's stated reasons for not hiring her are a pretext for gender discrimination. Defendant's motion for summary judgment will be granted as to Count I (employment discrimination under Title VII) and Count II (employment discrimination under the NJLAD).

### II.     Defendant's motion for summary judgment on Counts III and IV

Defendant also moved for summary judgment on Count III, for breach of contract, and Count IV, for intentional infliction of emotional distress. Plaintiffs have not opposed the motion. Defendant's motion for summary judgment on Counts III and IV is granted.

### CONCLUSION

For the reasons stated above, this Court determines that Defendant has demonstrated that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Defendants have shown the absence of evidence of employment discrimination, as alleged in Counts I and II in the Complaint. In response, Favinger has not produced evidence sufficient to make out a prima facie case of employment discrimination, and Cutrona has not produced evidence sufficient to persuade a reasonable jury that Defendant's articulated reasons for its employment decision are a pretext for illegal discrimination. Plaintiffs have not opposed Defendant's motion for summary judgment on Counts III and IV. Defendants' motion for summary judgment is granted in its entirety.

 S/Joseph A. Greenaway, Jr.  
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: July 5, 2006